*To: Bl Lilly p16- 10/0*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CASE NO.:08-CV-0487A

SCOTT A. STEPIEN
5279 MILITARY ROAD
LEWISTON, NEW YORK 14092

LOCAL RULE 56.1(A)
STATEMENT OF MATERIAL FACTS

PLAINTIFF

V.

DAVID S. SCHAUBERT
F. WARREN KAHN
LOUIS M. PALMERI
ROBERT LAUB
JAMES MEZHIR
KARL W. KRISTOFF
HODGSON RUSS LLP



DEFENDANTS

-------------------------------------------

Scott A. Stepien, *pro se*, submits the following STATEMENT OF MATERIAL FACTS, pursuant to Local Rule 56.1(a) of the Local Rules of Civil Procedure of the Western District of New York.

1. Plaintiff received the most votes in the May, 2006, election for one of two available seats on the Lewiston Porter Central School District Board of Education ("Board").

2. Elected at the same time was Edward Lilly. Lilly served three prior terms on the Board for a total of nine (9) years and was the Board's most experienced and longest serving member.

3. Besides plaintiff and Lilly, two teacher union backed candidates sought election to the Board in May, 2006. Robert DiFrancesco, a retired Niagara Falls School District Administrator, and Michael Gentile, an associate professor at Niagara University whose wife was employed at Lewiston Porter. The teacher union actively recruits, endorses, and funds candidates for the Board.

4. With the election of private businessman Lilly and plaintiff who is an attorney to the Board, the July, 2006, reorganization resulted in the following make up of the Board: David Schaubert, president, who represented himself as an air force employee, Louis Palmeri, vice president, industry employee, James Mezhir, member, community college professor, Robert Laub, member, retired teacher and former Niagara Falls teacher union president, and Leonard Palumbo, member, teacher.

5. Following the July 5, 2006, Board reorganization meeting, two factions on the Board emerged. Plaintiff's Exhibit A, attached hereto and made a part hereof, are Board meeting minutes arranged chronologically by date and contains the raw data which, properly interpreted by a knowledgeable observer, shows the development of the two Board factions.

6. According to the July 25, 2006 Board meeting minutes, Items NA-2 and NA-3, pages 1-7, plaintiff and Lilly voted for a "Request for Proposal" while defendants Schaubert, Palmeri, Laub, and Mezhir opposed. For NA-3, plaintiff and Lilly opposed the no-bid, back-room deal with the architects while defendants Schaubert, Palmeri, Laub and Mezhir supported same.

7. According to the September 19, 2006 Board meeting minutes, Lilly's report stresses the need for accountability and expresses concerns the Board is heading in the wrong direction.

8. According to the October 17, 2006 Board meeting minutes, Item NA-18, was an objectionable contract that increased administrator salaries. Defendants Schaubert, Palmeri, Laub and Mezhir

2

approved that contract while plaintiff and Lilly opposed. According to those same meeting minutes, Item NA-20 was opposed by plaintiff and Lilly while defendants Schaubert, Palmeri, Laub and Mezhir supported it. According to those same meeting minutes, the Baord member report section shows the emergence of the self-righteousness of defendants Schaubert, Palmeri, and Laub as they were awestruck with their power to excessively spend taxpayer cash in front of an appreciative and admiring crowd of beneficiaries.

9. According to the December 19, 2006 Board meeting minutes, we have the Schaubert manifesto revealed and defined in terms of metaphors of "cheese," "mice," "human shields," and "return fire." Such objectionable, bizarre, foaming at the mouth ranting, delivered in the presence of plaintiff and Lilly further distinguished and separated defendants Schaubert, Palmeri, Laub and Mezhir from plaintiff and Lilly.

10. While it did not appear on the January 16, 2007 Board meeting minutes, plaintiff expressed an objection to the Board and Ms. Carlson, Esq., who was in attendance, concerning a memorandum prepared for the school outlining defense and indemnification rules for a Board member who was criminally charged for stalking the wife of a district teacher. The point made was that the Board should direct projects of that sort.

11. According to the February 13, 2007 Board meeting minutes, Item NA-3, plaintiff and Lilly insisted on putting a contract out for bid while defendants Schaubert, Palmeri, Laub and Mezhir voted otherwise.

12. According to the March 20, 2007 Board meeting minutes, Item NA-10, defendant Schaubert, despite having been previously advised by a representative of the New York State Committee on Open Government that his position was wrong, launched a vicious personal attack on Lilly concerning poll books. According to those same meeting minutes, Item NA-13, after a district

teacher was caught ingesting cocaine on campus, in an abdication of his most basic responsibilities as a Board member, defendant Schaubert reduced a drug testing initiative to mere political gamesmanship and intrigue. According to those same meeting minutes, defendants Palmeri, Laub, and Mezhir similarly abdicated their responsibilities in opposing NA-13, with plaintiff and Lilly in favor. According to those same meeting minutes on page 9, defendant Schaubert stated "the law, is the law, is the law." This apparently served as a code phrase for defendants Schaubert, Palmeri, Laub and Mezhir, in reference to their conspiracy to remove, illegally, plaintiff and Lilly from the Board and this is the first recorded appearance of that phrase as uttered by the conspirators. Also according to those same meeting minutes, Item NA-14, plaintiff and Lilly supported responsible spending but defendants Schaubert, Palmeri, Laub and Mezhir neglected to follow the terms of he agreement. Also according to those same meeting minutes, page 11, we see community comment backlash directed towards defendants Schaubert, Palmeri, Laub and Mezhir not doing their duty to prevent drug abuse at the school, with defendant Mezhir, on page 12, uttering the code phrase "the law is the law." Also according to those same meeting minutes, page 13, defendant Schaubert embarked on a lengthy and nasty tirade against Lilly which showed if nothing else his hostility and malice towards Lilly and by extension plaintiff.

13. According to the April 17, 2007 Board meeting minutes, page one, the community comments of Alan Ward are probative of the defining climate of deceit and hostility created, fostered and exploited by defendants Schaubert, Palmeri, Laub and Mezhir. Also according to those same meeting minutes, Item NA-5, plaintiff voiced objections to attorneys being used without Board approval and voted with Lilly against that Item while defendants Schaubert, Laub and Mezhir voted in favor. Also in those same minutes, Board member reports show the existence of the two

4

factions, with the language being ratcheted by defendant Schaubert to include on page 9, "breaking the law," "when it's civil rights, the board members are financially responsible and will not be defended by the school district. You are personally liable for any costs if you're sued, whereas if we do something else that is within the law, the district indemnifies us, they defend us, and if we lose, they pay the bill. I don't do illegal things-that's not my way of doing things." While obviously not thinking clearly at that point, Schaubert is nevertheless clearly contemplating legal action of some sort to settle his numerous imagined and real grudges.

14. According to the April 17, 2007 Board meeting minutes, defendants Schaubert and Palmeri were appointed attorneys at district expense to defend against a petition to the New York State Commissioner of Education filed against them by Lilly.

15. According to the May 1, 2007 Board meeting minutes, Item NA-12, Lilly attempted to protect the public against "those who wish to burden the public for their own personal gain, as they leave office." The measure failed with plaintiff and Lilly in favor and defendants Schaubert, Palmeri, Laub and Mezhir in opposition.

16. According to the Hodgson Russ LLP billing records dated July 31, 2007, contained in Exhibit B, defendant Kristoff was conspired with defendant Kahn and Schaubert on June 12, 2007, and other indicated dates to illegally remove plaintiff and Lilly from the Board and violate their rights of association and freedom of speech. At no point had the Board publicly authorized these meetings.

17. According to the June 19, 2007 Board meeting minutes, seeking to "shock and awe" in the Harlan Ullman sense of the phrase, defendants Schaubert and Palmeri, backed up by defendants Laub and Mezhir, supported legally by Kahn and although it was unknown at the time defendant Kristoff as well, commenced an illegal, kangaroo proceeding to settle the score against those on the Board and their community supporters who favored responsible spending, accountability, and student

5

achievement. The measure, without an agenda Item number, passed, with plaintiff and Lilly in opposition and defendants Schaubert, Palmeri, Laub and Mezhir in favor. Apart from the surprise, "shock and awe" factor, the interesting part is that defendant Kahn was directed to "marshal and present any available evidence regarding the matters charged." That is prospective terminology and indicates that the task was not yet completed. Neither plaintiff nor Lilly were ever told what evidence would be produced nor were we told who would be called as witnesses during the kangaroo hearing orchestrated by the defendants. Also according to those same meeting minutes, plaintiff and Lilly opposed defendant Kristoff being appointed as a "neutral, non-voting Presiding Officer."

18. On June 20, 2007, defendant Schaubert sent an email to Clark Godshall, BOCES Superintendent, attempting to sabotage any hope of plaintiff and Lilly getting into an Education Law §2102 (a) class before the object of the conspiracy could be achieved. See Exhibit C, sub exhibit J.

19. On June 22, 2007, plaintiff received a letter from defendant Kristoff who was attempting to get himself appointed as "Hearing Officer" for the proceeding in which he was illegally conspiring with defendants Schaubert and Kahn in order to deprive plaintiff and Lilly of their constitutional right to free speech and association. See Exhibit A, plaintiff affirmation, dated August 24, 2009. Also on June 22, 2007, defendant Kahn by letter refused to provide legal counsel to plaintiff and Lilly. See Exhibit A, plaintiff affirmation.

20. The illegal hearing held on June 30, 2007, was mostly transcribed although some of Lilly's and all of plaintiff's closing arguments are truncated without any explanation ever being provided by the defendants. See Exhibit D, sub exhibit c. The hearing was not fair because neither plaintiff nor Lilly were ever told prior to the hearing what evidence would be presented against us, the identity

of the witnesses against us, and the hearing could not have been full as required under Education Law §1709 (18) for those reasons as well.

21. The illegal hearing, along with the attorney billing records corroborate specific date references in the amended complaint. The transcript shows how clear it was made to the defendants Kahn, Schaubert, Palmeri, Mezhir and Laub that what they were doing was wrong. A simple inspection sticker example (Exhibit D, sub exhibit c, p. 145, lines 11-23) illustrated that the hearing was illegal because it was premature. Further, a tax filing deadline was also used (Id., page 178, lines 12-18). The hearing showed the defendants knew our term was not yet expired and thus there was no violation of any law. Id., page 144, lines 1-4. Defednat Schaubert admitted he instructed defendant Kahn to prepare charges. Id., page 148, lines 8-10. Defendant Schaubert admitted conspiring with all other defendants, including Kristoff and Kahn, to engineer the illegal removal of plaintiff and Lilly. Id., page 153lines 7-23, page 154 lines 1-5. In sum, the illegal hearing transcript proves many aspects of the amended complaint. The code phrase the "law is the law is the law," which appears numerous times, such as at Id., page 208 line 14, page 214 lines 4-12, page 216 line 9, page 231, line 5, page 234 line 21, page 237 lines 9-10, page 244 lines 16-17, page 250 lines 2-6, etc., reveals the enthusiasm with which the conspirators were pursuing their illegal objective. The conspiring attorneys showed at a minimum their disloyalty to their client, the Board, which included Lilly and plaintiff. See letter from plaintiff to defendant Kahn dated June 3, 2008, Exhibit A, plaintiff affirmation

22. Despite overwhelming evidence that the hearing was illegal, defendants Schaubert, Palmeri, Laub and Mezhir illegally voted to remove plaintiff and Lilly. A petition to the Commissioner of Education followed (Exhibit C), defendants Answered, (Exhibit D), and plaintiff replied (Exhibit E). The Commissioner decision reinstating plaintiff and Lilly is found in the amended complaint

7

Exhibit C. Before the decision however, plaintiff sought reinstatement. See Letter dated September 6, 2007, Exhibit A, plaintiff affirmation. Defendants responded on September 12, 2007, showing the conspiracy continued to illegally keep plaintiff and Lilly from representing the electorate. See Exhibit A, plaintiff affirmation.

23. By letter dated June 3, 2008, plaintiff castigated Kahn for his disloyalty, incompetence, and lack of candor. See Exhibit A, plaintiff affirmation

24. The defendants Kahn, Kristoff, Schaubert, Palmeri, Mezhir and Laub could not stand plaintiff and Lilly vocally advocating for the community, students and fiscal responsibility through our voting record while they served the singular interests of the teacher union. By illegally removing plaintiff and Lilly defendants thought they had settled their score. This lawsuit followed.

25. At no point during the course of this proceeding had plaintiff ever violated or been in violation of any law.

Dated: August 24, 2009
       Lewiston, New York

/Scott A. Stepien
*pro se*
5279 Military Road
Lewiston, NY 14092
(716) 297-4699