UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Scott A. Stepien,

                        Plaintiff,                        **Hon. Hugh B. Scott**

                                                                  08CV487A

                         v.                                 **Report**
                                                                   **&**
                                                                 **Recommendation**

David S. Schaubert et al.,

                        Defendant.
_____

Before the Court are the defendants' respective motions for summary judgment (Docket No. 52, 58 and 64).

## Background

This case revolves around the plaintiff's ouster, and reinstatement, to the Lewiston Porter Central School District Board of Education ("Board"). The plaintiff, Scott A. Stepien, who is an attorney representing himself *pro se* in this matter, alleges that on May 16, 2006, he was popularly elected to serve a three-year term on the Board. He asserts that he was illegally removed from the Board by defendants David S. Schaubert ("Schaubert"), Louis M. Palmeri ("Palmeri"), Robert Laub ("Laub"), James Mezhir ("Mezhir"), F. Warren Kahn ("Kahn"), Karl W. Kristoff ("Kristoff"), and Hodgson Russ LLP ("Hodgson").

1

Stepien alleges that he was sworn in as a member of the Board on July 5, 2006. Schaubert was elected President of the Board. Other Board members included the plaintiff, Mezhir, Laub, Leonard Palumbo, and Edward Lilly. (Docket No. 38 at ¶ 14).[1] According to the plaintiff, he and Lilly campaigned on platforms of fiscal responsibility and student achievement. (Docket No. 38 at 15). At some point thereafter, the Board voted 5-2, with Stepien and Lilly dissenting, to award an allegedly "multimillion dollar, no-bid" contract to an architectural firm to design capital improvements to Lewiston Porter School District ("District") facilities. The plaintiff further alleges that the Board voted 4-2, again with Stepien and Lilly dissenting, to approve contracts for District instructional staff granting pay raises beyond state mandated step-increases. By the same margin, the Board voted to grant pay raises to the administrative staff which Stepien believes were excessive. The Board defeated a mandatory random substance abuse testing program backed by Stepien and Lilly, again by a 2-4 vote. Thus, Stepien asserts that the Board split into two factions: Stepien and Lilly on one side; and Schaubert, palmeri, Mezhir and Laub on the other. (Docket No. 38 at ¶ 15).[2] The plaintiff alleges that defendants Kristoff, Kahn, Scharubert, Palmeri, Laub and Mezhir conspired to violate his rights to freedom of speech, association, right to hold public office, procedural due process and substantive due process. (Docket No. 38 at ¶18).[3] Stepien asserts that the defendants were motivated to conspire

---

[1] The plaintiff filed an Amended Complaint in this matter. (Docket No. 38).

[2] According to the plaintiff, Palumbo "displayed a sporadic record of attendance during the 2006 Board Session," but that when he did attend meetings he usually voted with the majority. (Docket No. 38 at ¶ 15).

[3] Stepien alleges that the conspiratorial role of Schaubert and Palmeri ended on June 30, 2007 upon the expiration of their terms, but that the remaining defendants continued to conspire. (Docket No. 38 at ¶ 19-20).

against him in retaliation for his votes and for castigating Schaubert and others for contemplating hiring an attorney to defend Palumbo after he was arrested for harassing the wife of a District employee. (Docket No. 38 at ¶ 22). In furtherance of their alleged conspiracy, the plaintiff alleges that:

    a.    Defendants Kristoff, Kahn and Schaubert, acting in secret and without full Board approval, illegally impaneled a New York State Education Law §1709(18) hearing against Stepien and Lilly as a pretext to suppress their dissent. (Docket No. 38, ¶ 23(a)).

    b.    On June 14, 2007, Schubert communicated by email with Kristoff concerning the illegal §1709 proceeding. (Docket No. 38, ¶ 23(b)).

    c.    On June 15, 2007, Kristoff communicated by telephone with Kahn concerning the §1709 proceeding, and that Kahn performed legal research regarding the proceeding. (Docket No. 38, ¶ 23(c)).

    d.    On June 16, 2006[4], Kristoff began preperation of materials to be used for the §1709 proceeding. (Docket No. 38, ¶ 23(d)).

    e.    On June 18, 2006, Kristoff completed the materials to be used at the §1709 proceeding and communicated with Kahn. (Docket No. 38, ¶ 23(e)).

    f.    On June 19, 2006, Kristoff and Kahn communicated regarding the §1709 proceeding.

    g.    On June 19, 2007, during the regular Board meeting, Kahn libeled and slandered the plaintiff "by uttering, to wit: 'Charge of Misconduct' and distributed copies of the same.

---

[4] The Amended Complaint lists this as occurring on June 16, 2006. However, inasmuch as all other related activity occurred in 2007, it is believed that this represents a typographical error and that the plaintiff intended to represent that this conduct took place on that date in 2007. The same is true for the following allegations said to have occurred on June 18, 2006 and June 19, 2006, respectively. (Docket No. 38, ¶ 23(e & f)).

(Docket No. 38, ¶ 23(g)). The Charge of Misconduct ("the Charge") (Docket No. 38, Exhibit B) states that Lilly and Stepien "willfully or by neglect failed to complete the minimum, approved training on the financial oversight, accountability and fiduciary responsibilities of a school board member as mandated by New York State Education Law Section 2102-a and Board Policy 2331. The Charge sought the removal of Lilly and Stepien.

h.    On June 21, 2007, Kahn communicated by phone with the Board clerk regarding the Charge. (Docket No. 38, ¶ 23(h)).

i.    On June 22, 2007, Kristoff prepared further documents to be used at the §1709 proceeding. Kahn, once again, communicated with the Board clerk regarding the proceeding. (Docket No. 38, ¶ 23(i)).

j.    On June 25, 2007, Kahn sent a fax to the Board clerk about the §1709 proceeding. (Docket No. 38, ¶ 23(j)).

k.    On June 26, 2007, Kahn conferred with the Board clerk, Schaubert and Kristoff about the §1709 proceeding; Kahn then prepared a letter for the Board clerk and faxed it to an unknown party; Kahn also prepared and served a subpoena on the Board clerk and prepared and delivered subpoenas for the plaintiffs to the Board clerk. (Docket No. 38, ¶ 23(k)).

l.    On June 26, 2007, Kristoff prepared documents for the §1907 proceeding and communicated by telephone with Kahn and Schaubert about the proceeding. Kristoff also communicated with Schaubert and palmeri concerning unspecified "conflicts." Kahn also communicated with the Board clerk, faxed a letter to the Board clerk, and prepared and delivered subpoenas to the Board clerk for use at the proceeding. (Docket No. 38, ¶ 23(l)).

m.    On June 27, 2007, Kristoff sent a fax of two McKinney's sections to Kahn; kahn communicated with the Board clerk on three separate occasions regarding the §1907 proceeding and prepared other documents for use at the proceeding. (Docket No. 38, ¶ 23(m)).

n.  On June 28, 2007, Kristoff communicated with Kahn regarding a stay application filed with the New York State Educaton Commissioner. Kahn communicated with Interim School Superintendent Don Rappold, Schaubert, and Laub regarding the §1907 proceeding and faxed an unspecified document to an unspecified third person. (Docket No. 38, ¶ 23(n)).

o.  On June 29, 2007, Kristoff delivered or caused to be delivered, official "Misconduct" charges to unspecified persons at the District; Kahn communicated with Schaubert and a unspecified third person and sent a fax to this third person; Schaubert, palmeri, Mezhir and Laub met and appointed an officer to preside of the §1907 proceeding; and the hearing officer accepted the illegal appointment. (Docket No. 38, ¶ 23(o)).

p.  On June 30, 2007, Kahn, Schaubert, palmeri, Laub, mezhir and others conducted the illegal hearing and voted to remove Stepien and Lilly from the Board. Schaubert, Palmeri, Laub and Mezhir libeled and slandered the plaintiff and Lilly by re-uttering and republishing the June 19, 2007 Charge. (Docket No. 38, ¶ 23(p)).

q.  On July 2, 2007, Kahn communicated with Kristoff by phone regarding the hearing and notices to Stepien and Lilly; Kahn also communicated with a process server. (Docket No. 38, ¶ 23(q)).

r.  On July 5, 2007, Laub, Mezhir and others voted to pay Kahn, Kristoff and Hodgson legal fees to oppose the reinstatement of Stepien and Lilly. (Docket No. 38, ¶ 23(r)).

The Board commenced proceedings pursuant to §1709 of the New York Education Law ("§1709") to remove Stepien and Lilly based upon an alleged failure to comply with Section 2102-a of the New York Education Law ("§2102-a"). Section 2102-a requires that "[e]very trustee or voting member of a board of education of a school district or a board of cooperative educational services, elected or appointed for a term beginning on or after July first, two

5

thousand five, shall, within the first year of his or her term, complete a minimum of six hours of training on the financial oversight, accountability and fiduciary responsibilities of a school board member." (Emphasis added). The record reflects that on the day after Stepien was elected to the Board, the Board clerk provided him with information including that he was required to comply with the fiscal oversight training. The information included the dates and times of the training. (Docket No. 60, Exhibit A and C). Stepien was present at the June 20, 2006 Board meeting (but had not yet been sworn in) when the Board adopted policy 2331 which adopted the requirements of §2102-a. (Docket No. 60, Exhibits D and G). Steptien was again given information relating to the fiscal training requirement on September 1, 2006 (Docket No. 60, Exhibit F, pages 10-11); on April 17, 2007 (Docket No. 60, Exhibit G, Attachment 2); on May 11, 2007 (Docket No. 60, Exhibit G, Attachment 3); and again on May 18, 2007 (Docket No. 60, Exhibit G, Attachment 4). The Board voted to remove Stepien and Lilly from their positions based upon an alleged failure to obtain the required training on June 30, 2007.

The plaintiff appealed the June 30, 2007 removal determination to the New York State Education Department. On March 25, 2008, Richard P. Mills, New York State commissioner of Education, reversed the decision to remove Stepien and Lilly and reinstated both to the Board. (Docket No. 38, Exhibit C). Commissioner Mills determined that the first year of Stepien's term did not end until Saturday, June 30, 2007, and thus, Stepien would have had until Monday, July 2, 2007 to obtain the training necessary to comply with §2102-a. Thus, Mills determined that the proceeding utilized to expel Stepien and Lilly was premature. (Docket No. 38, Exhibit C, page

5-6).[5] Commissioner Mills noted that as soon as he was charged with failure to complete the training, Stepien made arrangements and completed the training only 28 days after the end of the first year of his term. (Docket No. 38, Exhibit C, page 7). In the appeal, Stepien had argued that the Board acted in bad faith and sought the removal of Laub and Mezhir.[6] Commissioner Mills declined to remove either member and, although he stated he was disturbed that the Board charged Stepien and Lilly prematurely, he found that for the purposes of New York Education Law §3811, the Board had acted in good faith. (Docket No. 38, Exhibit C, page 8).

In the instant action, the plaintiff alleges six claims: (1) the defendants violated 42 U.S.C. §§ 1983, 1985(3) and 1986 by infringing on the plaintiff's First Amendment rights of freedom of expression and assembly by removing illegally him from the Board with invidious, class-based, discriminatroy animus [Count One]; that the defendants, in violation of §1983, denied him is rights under the Fourteenth Amendment in depriving him of his public office without due process of law [Count Two]; (3) that the defendants, in violation of §1983, abridged his right under the Fourteenth Amendment to hold public office [Count Three]; (4) that the defendants, in violation of §1985(1), prevented him from holding his duly elected office, and injured his reputation and property [Count Four]; (5) that the defendants, in violation of §§1983, 1985(3) and 1986,

---

[5] In reversing the Board and reinstating Stepien and Lilly, Commissioner Mills stated: "I do not take this action lightly. The mandatory board member training requirement is a critical component of the fiscal responsibility legislation enacted in 2005. ... The required training is intended to guide board members in the exercise of their important fiduciary responsibilities and oversight of significant public funds. On the record before me, it appears that the petitioners did not take this educational requirement seriously, and did not demonstrate the kind of accountability that the statute and its implementing regulations contemplate." (Docket No. 38, Exhibit C, pages 6-7).

[6] Schaubert and Palmeri had already left the Board after the expiration of their terms.

conspired to violate his clearly established constitutional rights [Count Five]; and (6) that the defendants committed libel, libel per se, slander, slander per se, causing the plaintiff to suffer damages and the indignity of being illegally removed from public office in a highly publicized sensational manner [Count Six].

The defendants have moved for summary judgment on various grounds.

## Discussion

**Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Sport, Inc. v. Starter Sportswear, Inc., 964 F. 2d 186, 188 (2nd Cir. 1992) citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party. See Taggart v. Time Inc., 924 F.2d 43, 46 (2d Cir.1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit Information, Co., 970 F.2d 1110, 1112 (2nd Cir. 1992), citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2nd

Cir. 1991), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "The non-moving party must come forward with enough evidence to support a jury verdict ... and the ... motion will not be defeated merely ... on the basis of conjecture or surmise." Trans Sport, supra, 964 F.2d at 188, quoting Bryant v. Maffucci, supra. If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the nonmoving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2nd Cir. 1992), citing Dusanenko v. Maloney, 726 F.2d 82 (2nd Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2nd Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2nd Cir. 2000) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Section 1983 Claims Against Kristoff, Kahn & Hodgson**

Kristoff, Kahn and Hodgson argue that the plaintiff cannot maintain §1983 against them inasmuch as their participation in the events underlying Stepien's claims was in the capacity as legal counsel. It is undisputed that Kristoff and Kahn are attorneys who, in their professional capacity, provided legal services to the Board. (Docket No. 55 at ¶¶28-29). Hodgson is the law firm of which Kristoff is a partner.

It is well-settled that in order to maintain a claim under 42 U.S.C. § 1983, a party must first demonstrate two elements: (1) that the conduct complained of was committed by a person

acting under color of law; and (2) that the conduct complained of deprived the complainant of rights, privileges, or immunities secured by the Constitution or the laws of the United States. 42 U.S.C. § 1983; Carlos v. Santos, 123 F.3d 61, 65 (2d Cir.1997); Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir.1994); Burtnieks v. The City of New York, 716 F.2d 982, 986 (2d Cir.1983). Private conduct is excluded from the reach of Section 1983 "however discriminatory or wrongful." Elmasri v. England, 111 F.Supp.2d 212, 217 (E.D.N.Y.2000) (quoting American Manufacturers Mutual Insurance Co. v. Sullivan, 526 U.S. 40, 50, (1999) (quoting Shelley v. Kraemer, 334 U.S. 1, 13, (1948)).

Generally, a consultant's professional opinions and the advice he offers to municipalities are not state action and thus cannot support claims against such consultants for liability under section 1983. An attorney providing legal counsel to a municipal entity is not subject to §1983 claims based upon the conduct of the municipality. *Goetz v. Windsor Central School District,* 593 F.Supp. 526, 528-529 (N.D.N.Y.1984) (the conduct of a school attorney acting in his professional capacity in representing a municipal client does not constitute action under color of law for purposes of §1983); Zdziebloski v. Town of East Greenbush, N.Y., 336 F.Supp.2d 194, 202 (N.D.N.Y.,2004)(Each of the decisions about which the plaintiff complains are decisions made by a vote of the Board. Defendant, an attorney, was not a voting member of the Board, none of his participation was sufficiently direct to create liability for § 1983 purposes. His position as a legal advisor to the Board is insufficient. Involvement in discussions that lead to a decision is not personal involvement under § 1983); Omnipoint Communications, Inc. v. Comi, 233 F.Supp.2d 388, 395 (N.D.N.Y.2002) (where a consultant "merely provides professional advice, such advice cannot be considered state action for purposes of section 1983"); R-Goshen

LLC v. Village of Goshen, 289 F.Supp.2d 441, 445 (S.D.N.Y.,2003)(consultant who drafted challenged town ordinance merely provided advice; not subject to claim under §1983).

The plaintiff's papers in response to the instant motion do not address this argument or the authority cited by the defendants. (Docket No. 68). The plaintiff has not articulated a basis upon which to conclude that Kristoff and Kahn acted in manner other than as counsel to the Board. Inasmuch as the conduct of Kristoff, Kahn and Hodgson was within the scope of their legal representation of the Board, the plaintiff cannot maintain the §1983 claims against these defendants.

In light of the above, summary judgment should be granted to the extent the plaintiff seeks to assert §1983 claims against Kristoff, Kahn or Hodgson.

**§1985 and §1986 Claims**

The plaintiff claims that the defendants conspired to violate his rights under 42 U.S.C. §§1985(1)[7], 1985(3)[8] and 1986.[9] The defendants assert that the intracorporate conspiracy

---

[7] Section 1985(1) provides, in relevant part: "If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof ... ."

[8] Section 1985(3) provides that "[i]f two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice

doctrine bars these claims. Under the intracorporate conspiracy doctrine, "the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring with each other." Crews v. County of Nassau, 2007 WL 4591325 (E.D.N.Y. 2007)(citing cases); *see also* Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir.1978) ("[T]here is no conspiracy if the conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment."). This doctrine has been applied to the conduct of a school board. Doe v. Bd. of Educ. of Hononegah School Dist. 207, 833 F.Supp. 1366, 1381-1382 (N.D.Ill.1993); Clark v. Louisa County School Board, 472 F.Supp. 321, 324 (E.D.Va.1979); Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ., 926 F.2d 505, 509-510 (6th Cir.1991).

Without elaboration or authority, the plaintiff asserts that "the intracorporate conspiracy doctrine is not applicable because the actions were not within the scope of the defendants' duties,

---

President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

⁹ In relevant part, §1986 provides: "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action ... ."

the attorneys are not school employees, and there were numerous instances of conspiratorial activity, not one." (Docket No. 68 at page 4). The record reflects that the Board members acted within the scope of their duties pursuant to §2102-a and §1709 of the New York State Education Law. As discussed below, §2102-a required any voting member of a board of education to complete certain training regarding fiscal responsibility. Section 1709, required that the Board remove a member of the board for official misconduct. The Board members determined, albeit incorrectly, that Stepien had violated §2102-a. Thus, their conduct in instituting §1709 proceedings was within the scope of their duties. The fact that the plaintiff has named the Board's attorneys as defendants in this matter does not negate the application of the intracorporate conspiracy doctrine. The plaintiff has presented no factual basis that the conduct of the Board's counsel was outside the scope of its legal representation to the Board. Heffernan v. Hunter, 189 F.3d 405 (3d Cir.1999)(when an attorney's conduct falls within the scope of his representation of his client, a § 1985 conspiracy cannot exist); Farese v. Scherer, 342 F.3d 1223, 1232 (11th Cir. 2003)(We agree with the well-reasoned opinion of the Third Circuit and hold that as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy).

The intercorporate conspiracy doctrine applies in this case and precludes the plaintiff from maintaining claims under §§1985(1), 1985(3) and 1986 in this action. It is recommended that summary judgment be granted as to all defendants with respect to Count Four, Count Five, and the portion of Count One which asserts claims under §§1985 and 1986.

**Legislative Immunity**

The defendants assert that when a local board performs legislative duties, its members have absolute immunity from liability regardless of their motives. Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 210 (2d Cir.2003) (citing Bogan v. Scott-Harris, 523 U.S. 44, 54 (1998), and Forrester v. White, 484 U.S. 219, 224, 227, (1988)); Carlos v. Santos, 123 F.3d 61, 66 (2d Cir.1998) (holding that the "doctrine of absolute legislative immunity under § 1983 applies to local legislators.") More specifically, legislative immunity shields an official from liability if the act in question was undertaken "'in the sphere of legitimate legislative activity.'" Harhay, 323 F.3d at 210 quoting Bogan, 523 U.S. at 54. Local legislators, like their counterparts on the state and regional levels, are entitled to absolute immunity for their legislative activities. Bogan, 523 U.S. at 49; Harhay, 323 F.3d at 210. The Second Circuit in, Almonte v. City of Long Beach, 478 F.3d 100, 106 (2d Cir. 2007), held that legislative immunity cloaks not only the individual's conduct in casting a vote, but also any discussions the individual may have held, and any agreements they may have made, regarding the matter subject to the vote. "That the discussions and agreements occurred in secret does not strip these activities of their legislative function." Almonte, 478 F.3d. at 106.

As noted above, the Board instituted §1709 proceedings based upon the plaintiff's alleged failure to complete the training on the financial oversight, accountability and fiduciary responsibility within the first year of his term as required by §2102-a. Stepien was elected to the Board on May 16, 2006, but was not sworn into office until July 5, 2006. (Docket No. 38 at ¶

14

14). It appears that in early June of 2007, the defendants took the position that Stepien had failed to comply with the §2102-a requirement within the first year of his term. Section 1709 of the New York Education Law provides that: "The said board of education of every union free school district shall have power, and it shall be its duty ... (18) [t]o remove any member of their board for official misconduct. But a written copy of all charges made of such misconduct shall be served upon him at least ten days before the time appointed for a hearing of the same; and he shall be allowed a full and fair opportunity to refute such charges before removal."

The plaintiff does not directly address the legislative immunity argument in his responsive papers. (Docket No. 68). The record reflects that the Board was acting in its legislative capacity when it initiated proceedings against Stepien under §1709.[10] Although the plaintiff argues that the Board was acting in bad faith, an "unworthy purpose cannot defeat absolute legislative immunity as long as the challenged conduct is even arguably within delegated legislative powers and does not usurp the role of other branches of government. Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004); S. Lyme Prop. Owners Assoc. v. Town of Old Lyme, 2008 WL 323258, at *10 (D.Conn. Feb. 4, 2008) ("The enforcement policies may have been flawed, and the Defendant [municipal legislators] may have acted in bad faith, as is alleged by Plaintiffs, but legislative immunity is absolute and does not depend on these considerations."); Zdziebloski v. Town of E. Greenbush, N.Y., 336 F.Supp.2d 194, 203

---

[10] The plaintiff does not dispute the legislative nature of the Board action. In response to the instant motion, the plaintiff does not argue that the Board action was administrative, rather than legislative. The removal of a publicly elected official, akin to impeachment, is different in nature and character than administrative personnel determinations such as the termination of a Board employee. The determination in this case required the interpretation of §1709(18), the conduction of hearings and deliberations of the broader legislative goals required by §2102-a.

(N.D.N.Y.2004) (holding municipal legislative immunity to preclude asserted Section 1983 claim where town board members voted to eliminate plaintiff's job). The plaintiff cites to Miller v. Town of Hull, Mass., 878 F.2d 523 (1st Cir. 1989) in which members of a town redevelopment authority asserted First Amendment claims against the board members who voted to remove them from office. Miller did not discuss the issue of absolute legislative immunity and was decided prior to Bogan which extended the protection of legislative immunity to local legislative officials.

Thus, defendants Schaubert, Mezhir. Laub and Palmeri are entitled to absolute immunity from the plaintiff's §1983 claims in this case.[11]  Summary judgment should be granted in favor of these defendants in their individual capacity as to Count One, Count Two and Count Three.

**Libel and Slander Claims**

The plaintiff asserts state law claims of libel and slander against the defendants based upon the publishing and reading of the Charge of Misconduct at the §1709 hearing. The same legislative immunity which precludes liability for the §1983 claims, also precludes liability against the defendants for statements made in the context of legislative proceedings. Savoy of Newburgh, Inc. V. City of Newburgh, 242 Fed. Appx. 716, 720 (2d Cir. 2007). Ulloa v. Kuhel, 2008 WL 852506, at *1 (N.Y.Sup. 2008)(New York law has long recognized the absolute privilege that attaches to statements made in the course of judicial and quasi-judicial proceedings, this protection has been extended to administrative proceedings and hearings before

---

[11] Because the defendants are entitled to absolute legislative immunity in this matter, the Court need not reach with respect to the defendant's assertion of qualified immunity.

town and village boards)(internal citation omitted).

Because the plaintiff's state law defamation and libel claims are barred by the state law privilege which attaches to statements made in legislative proceedings, summary judgment should be granted as to all defendants with respect to the claims set forth in Count Six of the Amended Complaint.

**Conclusion**

Based on the above, it is recommended that the respective motions for summary judgment be granted consistent with the above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v.

Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

                                             */s/ Hugh B. Scott*
                                             United States Magistrate Judge
                                             Western District of New York

Buffalo, New York
February 23, 2010